IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD E. MILLER, JR. #322-6719 | : | |
| Plaintiff | : | |
| v. | : | CIVIL ACTION NO. JKB-15-1349 |
| SGT. JOSEPH MCCONNEHA[1] | : | |
| CPL. OLUSEYI SOYEMI | | |
| CPL. SANYA ABEDAYO | : | |
| MARYLAND CORRECTIONAL | | |
| INSTITUTION - JESSUP | : | |
| WARDEN CARROLL PARRISH | | |
| LT. LASLER | : | |
| LT. FOREHAM | | |
| LT. BOYD | : | |
| Defendants | : | |

**MEMORANDUM**

On May 6, 2015, plaintiff Edward E. Miller, Jr. ("Miller"), a Maryland Division of Correction ("DOC") prisoner then housed at Maryland Correctional Institution-Jessup ("MCI-J"),[2] filed a civil rights action pursuant to 42 U.S.C. § 1983, seeking $1,000,000 for "pain, suffering, and emotional distress" at the hands of corrections officers. (ECF No. 1 at 3.) In his complaint, as supplemented, he alleges that several correctional officers failed to respond when he reported he had suffered a seizure in his sleep the night before (ECF No. 7), while others thereafter refused his requests for a fan to cool his cell and prevent future seizures.[3] (ECF

---

[1] The Clerk shall amend the docket to reflect the proper spelling of defendants' names and to add new defendants Warden Parrish, Lt. Lasler, Lt. Foreham, and Lt. Boyd.

[2] While at MCI-J, Miller was assigned to disciplinary segregation. He remained on disciplinary segregation status from March 15, 2015, until his transfer to Eastern Correctional Institution ("ECI") on September 2, 2015. Declaration of Nicole Daugherty (ECF No. 21-1, ¶ 2).

[3] Miller initially named Lt. Lasler as the individual who denied his May 19, 2015, request to be provided a fan. (ECF No. 7 at 1). He later requested Lasler be dismissed, noting that it was Lt. Boyd, not Lasler, who on May 2, 2015, denied his request. (ECF No. 8 at 3).

No. 8). MCI-J Warden Parrish is alleged to have improperly investigated and denied Miller's Administrative Remedy Procedure ("ARP") grievance concerning his officers' misconduct. (ECF No. 6).[4] As a result, Miller contends that he was denied access to medical care in violation of the Eighth Amendment due to defendants' deliberate indifference to his serious medical needs.

## Procedural History

Defendants McConneha, Soyemi, and Abedayo, through counsel, have responded to Miller's complaint,[5] filing a motion to dismiss or, in the alternative, motion for summary judgment (ECF No. 13). That motion, which contains documents outside the pleadings, including affidavits, will be construed as a motion for summary judgment. It is opposed by Miller (ECF Nos. 22 and 24),[6] who seeks injunctive relief, a hearing, and further discovery (ECF Nos. 15, 18 and 24). After examination of Miller's non-dispositive motions and review of defendants' dispositive pleadings and exhibits, defendants' motion for summary judgment shall

---

[4] Miller also alleges that Dr. Yonas Sisray, who appears to be a physician employed by the DOC's contractual health care provider, Wexford Health Sources, Inc., has provided inadequate treatment for his back and neck pain. (ECF No. 6 at 2). As treatment provided by Wexford employees lies outside the parameters of Miller's complaint, Dr. Sisray will not be added as a defendant to this action. Miller remains free to file any appropriate claim against Dr. Sisray in a separate action.

[5] Miller moves for default judgment against these defendants, alleging their response is untimely. (ECF Nos. 11, 16 and 17). Pursuant to *In re State Prisoner Litigation,* Misc. No. 00-308, Administrative Order 2012-01 (D. Md. 2012), defendants' response was due by July 21, 2015, sixty days after counsel entered her appearance. On July 21, 2015, counsel requested an extension of time, until August 20, 2015, to respond. (ECF No. 9). The extension, opposed by Miller (ECF No. 12), was granted. The defendants' response was timely filed on August 19, 2015. Miller's opposition to the extension (ECF No. 12) and his motions for default (ECF Nos. 11, 16 and 17) are therefore denied.

[6] Miller has filed a pleading entitled "Motion of Facts" (ECF No. 24) complaining of slow mail delivery and the difficulty encountered trying to do legal research using LASI (Legal Assistance for State Institutions), a case law request system offered to those on disciplinary segregation who are unable to visit the prison law library. Miller requests "a subpoena for [the] 'Legal Mail Log Book'" to show "delayed First Class Mail" delivery (*id.* at 1), but does not indicate that the delays he experienced prior to his transfer to general population at ECI affected his ability to proceed with the instant litigation. The court is aware of the delays inherent in the LASI system and finds no reason to subpoena to further demonstrate its problems here.

be GRANTED,[7] for reasons stated herein.

## Non-Dispositive Matters

Miller's motion for injunctive relief and a hearing (ECF No. 15), filed on August 26, 2015, is a request (1) that he be provided "all and any" documents pertaining to his case, as well as (2) access to the law library. (ECF No. 15 at 1-2).[8] He also requests "protection be granted from the courts" and states he "already has been retaliated against by a high-ranking official for filing" administrative grievances "requesting that criminal charges be filed for reckless endangerment" against defendants for their alleged failure to fulfill "their duties to provide me with humane living conditions and reasonable safety as well as medical care that inevitably lead to serious physical injury." (*Id*. at 2). These requests are reiterated in his second motion, also filed on August 26, 2015. (ECF No. 18).

Defendants oppose the motions on the basis that the necessary documents were provided to Miller as attachments to their dispositive motion. They further note Miller has been a general population prisoner with access to the prison law library since September 2, 2015, one week after the filing of his injunctive relief motions. (ECF No. 21 at 4-5). Defendants contend that pursuant to Local Rule 803.1 (D. Md. 2014), Miller is not entitled to general discovery because a scheduling order has not been entered in this case. (*Id.* at 21).

Miller's discovery requests will be addressed in conjunction with his formal discovery request (ECF No. 24). His request for injunctive relief mandating his access to a law library was filed on August 26, 2015, one week prior to his transfer to ECI where, as a general population prisoner, he gained the privilege of library visits. His claimed need for court-mandated security

---

[7] A hearing is not necessary for resolution of this case. *See* Local Rule 105.6 (D. Md. 2014).

[8] This Memorandum adopts the pagination assigned through the court's electronic docketing system.

to keep him safe from retaliation is wholly conclusional, and on that basis alone need not be addressed. *See Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D.N.C. 1996) (conclusional allegations of retaliation insufficient to state claim).

In his final non-dispositive motion, Miller formally requests discovery, including (1) "all electronically stored information in reference to the investigation of [his] April 6, 2015" ARP, (2) a "live recorded video feed" of his housing unit, and (3) his housing unit log book and event records from April 3, 2015 (the day of his alleged seizure) to September 2, 2015 (the day of his transfer to ECI). (ECF No. 25 at 1). Defendants oppose the discovery request on the basis that the merits of Miller's complaint cannot be reached by the court due to Miller's failure to initiate (and complete) ARP review prior to bringing suit in federal court. (ECF No. 26 at 1-2).

For reasons set forth herein, defendants' argument shall prevail; Miller is not entitled to discovery in this case, because his failure to exhaust administrative remedies bars his claim to damages in this forum and precludes examination as to the merits of his Eighth Amendment claim.

**Standard of Review**

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides,

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

> otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in his favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have

the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing a genuine issue for trial.

**Analysis**

Defendants have raised an affirmative defense, arguing that Miller failed to exhaust his administrative remedies prior to filing suit.[9] The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

The Supreme Court has interpreted the language of this provision broadly; holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Miller's allegations, and his complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited the right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

In Maryland, filing a request for administrative remedy with the warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure

---

[9] *See Jones v. Bock*, 549 U.S. 199, 216–17 (2007) (failure to exhaust is an affirmative defense and prisoners are not required to demonstrate exhaustion in their complaints).

6

("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner must appeal to the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann., Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Blake v. Ross*, 787 F.3d 693, 700-01 (4th Cir. 2015).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.[10] *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Booth v.*

---

[10] Three purposes underlie the PLRA's exhaustion requirement: "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

7

*Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review). Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies, *see Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002), as it is a precondition to filing suit in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

Applying the PLRA exhaustion requirements here, Miller's claims must be dismissed if he failed to exhaust available remedies prior to bringing this suit. Miller states he filed an ARP grievance on April 6, 2015, complaining that his seizure was not treated as a medical emergency. (ECF No. 22 at 1-2; ECF No. 22-1 at 3). Miller further states that the alleged misconduct was so extreme that it amounted to criminal misconduct, and that "after I reported a criminal and civil violation my ARP was supposed to be dismissed for procedural reasons" and the matter referred to the Internal Investigation Unit ("IIU"). (*Id.* at 2).

Miller's argument is unavailing; the Warden reviewed the ARP, investigated the claim, and denied the grievance on May 18, 2015. The Warden clearly did not find the officers' conduct so egregious as to constitute criminal activity,[11] and an IIU investigation was not convened. (ECF No. 22-1 at 3). Miller did not appeal the Warden's decision, instead filing the instant lawsuit.

---

[11] Indeed, the Warden did not find that Miller suffered a seizure. (*Id.*).

Plaintiff's subjective belief that the ARP process did not apply to him, and that his grievance merited full investigation by the IIU, is not a valid basis for declining to participate in the established grievance procedure.

Defendants' dispositive motion will be granted. A separate order follows.


Date: November 2, 2015 _____/s/_____
James K. Bredar
United States District Judge